UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| WELDING TECHNOLOGIES, A DIVISION OF RILEY POWER, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-336 |
| | § | |
| JAMES MACHINE WORKS, LLC, *et al*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In a perfect world, the legal controversies between two parties would be resolved in a single lawsuit brought in a mutually acceptable forum.  In the real world, each of the two parties will often sue in its own preferred court and then ask the court hearing its opponent's suit to dismiss, transfer, or abstain from hearing that case.  Sometimes these procedural remedies are appropriate, and one of the courts disposes of the suit in front of it in order to let the dispute be resolved only in the other court.  At other times they are not, and both suits proceed in the classic "race to judgment."

Such is the situation here, where Plaintiff Welding Technologies, a Division of Riley Power, Inc., and Defendant James Machine Works, LLC, are engaged in a contractual dispute over a construction project at the Dow Chemical Company's plant in Freeport, Texas.  Both parties filed suit in the

courts of their preferred state—Texas for Welding Technologies and Louisiana for James Machine. Each party has now asked the court hearing the case its opponent initiated to abstain from doing so. Welding Technologies filed exceptions asking the Louisiana court not to hear that case; likewise, James Machine removed the Texas case to this Court and now moves for a stay pursuant to the *Colorado River* abstention doctrine or, in the alternative, a transfer of venue to the Western District of Louisiana.

The Court has considered the briefing and arguments of counsel and the controlling law, and concludes that neither a stay nor a transfer is appropriate under the facts of this case. The Court thus **DENIES** James River's motion.

## I.    BACKGROUND[1]

In the spring of 2011, James Machine, a company headquartered in Monroe, Louisiana, won a contract from Samsung Engineering America, Inc. to perform construction work at the Dow plant in Freeport. Part of that project included a welding job that James Machine decided to subcontract. Welding Technologies, headquartered in Massachusetts and Georgia, bid on that job and, in January 2012, entered into a subcontract with James

---

[1] The facts presented in this recitation are undisputed except where noted.

Machine to perform the welding job in exchange for payments totaling at least $1,330,427, an amount that was later revised to over $1.5 million.

Both parties timely began performance under the subcontract. However, on March 20, 2012, James Machine ordered Welding Technologies to stop work and ceased making payments. James Machine alleges it discovered that the work performed by Welding Technologies was defective and failed to meet specifications; Welding Technologies disputes this and alleges that it was able and willing to perform.

On March 22, 2012, James Machine sued Welding Technologies for breach of contract in state court in Ouachita Parish, Louisiana, alleging that Welding Technologies's defective welding work had caused James Machine extensive damages. James Machine did not serve process on Welding Technologies until July 3, 2012.

Meanwhile, in May 2012, Welding Technologies sent James Machine a notice of its intent to place a mechanic's lien against Dow's Freeport plant for the remainder of the amount owed under the subcontract. Welding Technologies filed an affidavit claiming a lien against the Freeport plant in the Brazoria County Clerk's office in July 2012. Defendant Merchants Bonding Company, acting on behalf of James Machine, filed a bond to

indemnify against and discharge the lien, and, in August 2012, filed a notice of that bond in the Brazoria County Clerk's office.

In October 2012, Welding Technologies filed this suit in state court in Brazoria County.   It brought a claim against both James Machine and Merchants for an action on the bond, and brought claims solely against James Machine for breach of contract and quantum meruit.  James Machine timely removed the case to this Court in November 2012.

Later in November, Welding Technologies moved to dismiss or stay James Machine's action in Louisiana state court.  The state court denied that motion in January 2013.  That same month, James Machine filed the instant motion for a stay in this case, or, alternatively, to transfer this case to the Western District of Louisiana.

## II.    *COLORADO RIVER* ABSTENTION

James Machine first argues that this Court should stay this case under the doctrine of *Colorado River* abstention "because this action, . . . is a clear exercise in forum shopping . . . ."  Docket Entry No. 17 at 2.  *Colorado River* allows federal district courts to abstain from hearing cases in favor of parallel state court cases "based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Murphy v. Uncle Ben's, Inc.*, 168

F.3d 734, 737–38 (5th Cir. 1999) (internal quotation marks, brackets, and citation omitted) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 816 (1976)).  However, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them'" and the application of the doctrine is strictly limited to cases with "exceptional circumstances" justifying abstention.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 19 (1983) (quoting *Colorado River*, 424 U.S. at 817); *see also* 17A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4247 (3d ed. 2007) ("After *Cone* there will be rare cases in which 'exceptional circumstances' will exist justifying stay or dismissal because of a concurrent state proceeding, but in most cases neither stay nor dismissal will be proper and the federal court will be obliged to exercise its jurisdiction." (italics added)); Josue Caballero, Note, Colorado River *Abstention Doctrine in the Fifth Circuit: The Exceptional Circumstances of a Likely Reversal*, 64 BAYLOR L. REV. 277, 299–300 (2012) (finding that the Fifth Circuit has reversed nearly nine out of every ten appealed district court decisions to abstain under *Colorado River*, but has never reversed a district court's decision not to abstain).

Six factors guide this Court's decision whether to stay this case under *Colorado River* in favor of James Machine's Louisiana action:

5

"(1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Murphy*, 168 F.3d at 738 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285–86 (1995)).  The decision of whether to surrender jurisdiction because of parallel state court litigation "'does not rest on a mechanical checklist' of these factors, but rather 'on a careful balancing of them, as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'"  *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497–98 (5th Cir. 2002) (quoting *Moses H. Cone*, 460 U.S. at 16) (brackets omitted)).

As a preliminary matter, Welding Technologies argues that the Court need not even reach the *Colorado River* factors.  It contends that the two cases are not parallel because they do not "involve the same parties and the same issues," *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005), and that a stay would be inappropriate because Welding Technologies's claim on the bond indemnifying its now-discharged lien on Dow's Freeport plant ultimately will require action by

6

this Court.  Docket Entry No. 20 at 16–18; *see Moses H. Cone*, 460 U.S. at 28 ("[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case . . . .").  The Court need not resolve these threshold issues, however, for James Machine's argument for a stay fails under the well-established *Colorado River* factors.

## A.    First Factor: Jurisdiction Over a Res

The first factor is whether either court has exercised jurisdiction over a res of real property.  The parties agree that there is no res under either court's jurisdiction since Defendants bonded around Welding Technologies's mechanic's lien on Dow's Freeport plant.  The absence of a res means that this first factor "is not, however, a merely neutral item"; instead, it weighs against abstention.  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988).

## B.    Second Factor: Relative Inconvenience of the Forums

The second factor is the relative inconvenience of the two forums, a factor that "primarily involves the physical proximity of the federal forum to the evidence and witnesses" and depends on "whether there is 'any contention that the federal forum [is] any less convenient to the parties than the state forum.'"  *Id.* at 1191–92 (quoting *Moses H. Cone*, 460 U.S. at 19).

James Machine argues that this Court is a less convenient forum than the Louisiana state court because there are no party witnesses remaining in Texas and James Machine's headquarters is in Ouachita Parish.   However, the parties' initial disclosures reveal that all identified nonparty witnesses— namely, the individuals who worked at Dow's Freeport plant and would have personal knowledge of whether Welding Technologies's work was defective—are located in either Houston or Freeport, Texas.   *See* Docket Entry No. 20-3 at 7–9, 14–16, 19–20.   Whatever inconvenience may be caused to James Machine's employees by proceeding in this Court is outweighed by the greater convenience this Court offers to the nonparty witnesses.  The second factor weighs heavily against abstention.

### C.   Third Factor: Avoiding Piecemeal Litigation

The third factor is the avoidance of piecemeal litigation.  To the extent that these suits are the same, as James Machine argues, there is only a risk of duplicative litigation, not of piecemeal litigation.   *See Murphy*, 168 F.3d 738.    "The prevention of duplicative litigation is not a factor to be considered in an abstention determination."    *Evanston*, 844 F.2d at 1192 (citing *Colorado River*, 424 U.S. at 817).   And to the extent that Welding Technologies's action on the bond is separate and must be resolved in this suit, as it argues, abstaining would increase the risk of piecemeal litigation.

The third factor is thus neutral, at most, and weighs against abstention.  *See Murphy*, 168 F.3d at 738.

### D. Fourth Factor: Order in Which Jurisdiction Was Obtained

The fourth factor is the order in which the two courts obtained jurisdiction over the respective actions.  However, this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Id.* (citations and internal quotations omitted).  Although James Machine filed the Louisiana case in March 2012, no action was taken in that case until seven months later, in October 2012, when settlement talks broke down and Welding Technologies filed this suit.  Moreover, it appears that this case is closer to resolution than the Louisiana action.  The parties have already exchanged some written discovery and the Court has set an October 2013 trial date.  At most, the fourth factor weighs neither in favor of nor against abstention.  *Cf. Id.* at 738–39 (holding that the factor weighed against abstention where the state and federal suits had been filed at the same time and were proceeding at the same pace); *Conseco Fin. Servicing Corp. v. Shinall*, 51 F. App'x 483, 2002 WL 31319368, at *5 (5th Cir. 2002) (holding that the factor weighed slightly in favor of abstention where some discovery had occurred in the state court action, which was filed nine months before the federal action).

### E.     Fifth Factor: Whether and to What Extent Federal Law Provides the Rules of Decision

The fifth factor is the presence of federal law issues in the case. This factor generally can only be neutral, when there are no federal issues, or weigh against abstention, when federal issues exist; the absence of federal issues "does not counsel in favor of abstention." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2000). The parties are in agreement that there are no issues of federal law in this case. Thus, the fifth factor weighs neither in favor of nor against abstention.

### F.     Sixth Factor: Whether the State Court Proceedings Are Adequate to Protect the Rights of the Party Invoking Federal Jurisdiction

The final factor is whether the party invoking federal jurisdiction would have its interests adequately protected in the Louisiana action. This factor, with its focus on the "rights of the party invoking federal jurisdiction," highlights an odd feature of the *Colorado River* issue in this case: the party that originally invoked federal jurisdiction by removing the case from state court, James Machine, now seeks to avoid federal jurisdiction. It is not at all clear to the Court that the party whose removal vested jurisdiction in a federal court should be able to then invoke a doctrine rooted in "principles of federalism and comity." *Growe v. Emison*, 507 U.S. 25, 32 (1993) (citing *Colorado River*, 424 U.S. at 814–17); *see also Black*

10

*Sea Inv.*, 204 F.3d at 650 ("The *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources."). Absent James Machine's removal of this case to federal court, there would be no issue of the federal court's "potential interference with ongoing state court proceedings." *Brown & Williamson Tobacco Corp. v. Williams*, 81 F.3d 155, 1996 WL 101363, at *2 (5th Cir. 1996) (unpublished opinion). But while the Court has doubts about whether James Machine should be able to ask a federal court to abstain when it is the reason the federal court got involved in the first place, Welding Technologies does not raise this concern and the Court finds that abstention is not warranted when the *Colorado River* factors are applied.

Going back to the sixth factor, which prompted the Court to consider the more general issue about the propriety of *Colorado River* given the procedural posture of this case, it is sufficient to note that, like the fifth factor, the sixth factor "can only be 'a neutral factor or one that weighs against, not for, abstention.'" *Murphy*, 168 F.3d at 739 (quoting *Evanston*, 844 F.2d at 1193).

Thus, of the six *Colorado River* factors, at least three weigh against abstention while three, at most, weigh neither in favor of nor against

11

abstention.[2]  Notably, the second factor, the relative convenience of the two forums, weighs heavily against abstention because this Court is a far more convenient forum for the nonparty witnesses.   The balancing of the *Colorado River* factors convinces the Court that there are no "exceptional circumstances" that justify disrupting the "balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16, 19.  A stay is not warranted.

### III.   MOTION TO TRANSFER VENUE

James Machine alternatively argues that this Court should transfer the case pursuant to 28 U.S.C. § 1404(a) to Monroe, in the Western District of Louisiana, the district encompassing both James Machine's corporate offices and the parish in which its state court action is pending.  Under section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to

---

[2] James Machine argues that a seventh factor, whether this Court's exercise of jurisdiction would promote forum shopping, weighs in favor of a stay.  Docket Entry No. 17 at 19.  Welding Technologies points out that considerations of forum shopping, although mentioned by the Supreme Court in a footnote in *Moses H. Cone*, are not recognized as a formal *Colorado River* factor.  *See* Docket Entry No. 20 at 15 n.7; *see also* WRIGHT ET AL., *supra*, at § 4247 (noting that some courts have considered forum shopping in the *Colorado River* analysis, but that courts may not decline to exercise jurisdiction because of forum shopping alone).  To the extent that considerations of forum shopping may be relevant to the *Colorado River* analysis, the Court simply notes that, in this case, these considerations would not affect the Court's decision that a stay is inappropriate.

which all parties have consented." 28 U.S.C. § 1404(a). The statute is intended to save "time, energy, and money while at the same time protecting litigants, witnesses, and the public against unnecessary inconvenience." *Republic Capital Dev. Grp., L.L.C. v. A.G. Dev. Grp., Inc.*, No. H-05-1714, 2005 WL 3465728, at *8 (S.D. Tex. Dec. 19, 2005) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). The plaintiff's initial choice of forum is entitled to deference; thus, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

Welding Technologies argues that a transfer is not warranted because the action could not originally have been brought in the Western District of Louisiana. *See* 28 U.S.C. § 1404(a). It points out that the Texas statute addressing bonds filed to indemnify mechanic's liens required it to file suit in Brazoria County district court. *See* Tex. Prop. Code Ann. § 53.175. Although transfer is limited to districts in which the plaintiff could have brought suit, the courts have generally interpreted this requirement to mean that suit could have been brought under federal law, that is, "that at least venue and subject-matter jurisdiction must be proper in the transferee district, and some courts have held that the defendant must also be amenable

to service of process." *See Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1104 n.5 (5th Cir. 1981) (citing 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §§ 3827, 3845 (1976 & 1981 Supp.)).  The Court is unaware of any cases holding that a state law limitation on where suit may be brought is relevant to the determination of where suit "might have been brought" for purposes of the federal venue transfer statute.  28 U.S.C. § 1404(a).

However, the Court need not resolve this threshold issue, for in any event the balance of the private and public interest factors evaluated when deciding a section 1404(a) motion weighs against a transfer.

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted).

The first private interest factor is a wash.  A transfer would ease access to whatever documents and other sources of proof are held at James

Machine's corporate offices in Monroe, but it would make it more difficult to access any evidence that may be held by nonparties Dow and Samsung at those companies' facilities in this District.   However, the second private interest factor weighs heavily against a transfer because only this Court would have subpoena power over the identified nonparty witnesses.   Those individuals all reside in either Houston or Freeport, within 100 miles of Galveston but more than 100 miles from Louisiana, and thus would be able to quash any subpoena issued by the Western District of Louisiana.   *See* Fed. R. Civ. P. 45(c)(3)(A)(ii).   The third private interest factor weighs slightly against a transfer.   A transfer would merely shift the cost of attendance from James Machine's party witnesses to any nonparty witnesses that reside in this District.   *See State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994) ("[I]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." (citations omitted)); *cf. Masco Operators, Inc. v. Thompson Tractor Co.*, No. G-12-152, 2012 WL 3028075, at *2 (S.D. Tex. July 23, 2012) ("Transferring venue from Galveston to Mobile would do no more than to shift the burden from [defendant] to [plaintiff] and would run counter to Section 1404(a)'s principle of affording deference to a plaintiff's choice of forum.").   The fourth factor is neutral.

James Machine argues that a transfer would avoid the prospect of having two separate trials and thus would make trying the case more "easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citation omitted).  But this argument is flawed because a transfer would not result in consolidation of the state and federal actions, which would still proceed independently towards trial.  The private interest factors weigh against a transfer.

The public interest factors also weigh against a transfer.  For the first, court congestion, although the Western District of Louisiana has approximately 35% fewer cases filed per judge than the Southern District of Texas, the Galveston division is unusual in its very low number of criminal cases, which frees this Court for speedy trials in civil cases.  *See Federal Court Management Statistics: September 2012, U.S. Courts*, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/distri ct-courts-september-2012.aspx (last visited Mar. 18, 2013).  The Court also notes that this case is already well on its way to an October 2013 trial date, and that, in 2012, civil cases in the Southern District of Texas reached disposition nearly four months faster than those in the Western District of Louisiana.  *See id.*  The first public interest factor weighs against a transfer.

The other public interest factors either weigh against a transfer or are a wash.  The second factor weighs against a transfer because the Southern

16

District of Texas has a significant localized interest in a case involving both alleged defective welding services provided at an industrial facility in Brazoria County and a lien and bond filed in the Brazoria County Clerk's office.  As for the third public interest factor, although the parties disagree on whether Texas or Louisiana law applies to their contractual claims, it seems likely that Texas law applies to Welding Technologies's action on the bond and thus that this Court will be more familiar than the Western District of Louisiana with at least that aspect of the case.  Finally, the choice of law issues cannot be avoided and must ultimately be decided by either this Court or the Western District of Louisiana.

Thus, the balance of the private and public interest factors weighs against a transfer, the proposed transferee venue is not "clearly more convenient" than the Southern District of Texas, *Volkswagen II*, 545 F.3d at 315, and the motion to transfer will be denied.

## IV.   CONCLUSION

Under the facts of this case, neither the extraordinary remedy of a stay under *Colorado River* nor a transfer to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a) is appropriate.  Defendant's motion to stay or to transfer (Docket Entry No. 17) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 18th day of March, 2013.

_____
Gregg Costa
United States District Judge